UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BREE WALKER, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>MARGRITH WOLF, an individual; TRAVIS DEBIE, an individual; AARON TEALL, an individual; ADA COUNTY, an Idaho County, AGENCIES/ COUNTIES/ MUNICIPALITIES 1-10; and JOHN/JANE DOES 1-10, individually and in their official capacities,<br><br>        Defendant. | Case No. 4:22-cv-00222-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is a Motion to Clarify (Dkt. 29) filed by Defendants Ada County, Travis DeBie, Aaron Teall, and Margrith Wolf's (collectively, the "County") seeking an order clarifying the Court's Memorandum Decision and Order entered on November 16, 2023 (the "MDO") (Dkt. 28). Plaintiff Bree Walked responded (Dkt. 30), and Defendants replied (Dkt. 31). The matter is ripe for adjudication.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral

argument, the Court will address the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). The Court provides the following clarification of its MDO.

## II. BACKGROUND

This case is a § 1983 civil rights action wherein Plaintiff Bree Walker brings claims for First, Fourth, and Fifth Amendment violations based on alleged conduct by Ada County law enforcement officers during a traffic stop on May 28, 2020. During that traffic stop, a K9 unit performed an open-air sniff of Walker's vehicle, and officers subsequently searched the vehicle.[1]

On April 19, 2023, the County filed a Motion for Summary Judgment. Dkt. 14. In response, Walker filed a Motion for Extension of Time to Complete Discovery and Respond to Defendants' Motion for Summary Judgment seeking to defer responsive briefing until after some limited discovery could take place. Dkt. 17. On June 8, 2023, the Court issued an Order staying the County's Motion for Summary Judgment until the Court determined whether and to what extent discovery would be permitted at summary judgment. Dkt. 23. Pursuant to the Court's request in that Order, Walker filed a Motion for Discovery outlining the scope and relevance of the information she sought to respond to the County's Motion for Summary Judgment. Dkt. 24 In her Motion, Walker requested discovery pertaining to three things: (1) the knowledge the officers had of Walker prior to the stop; (2) the training, policy, and testing records related to the K9 dog and its handler; and (3) the training and experience of Deputy DeBie regarding the identification of drugs,

---

[1] A more in-depth recitation of the facts underlying this case can be found in the MDO at Dkt. 28. For the sake of brevity, the Court repeats herein only those facts which are relevant to the pending motion.

including marijuana "shake."[2] Dkt. 17, at 2.

The Court issued its MDO denying Walker's Motion for Discovery with respect to her first request and granting the Motion with respect to requests two and three. Particularly relevant here, the Court stated in its order that it "grants Walker's request for limited discovery related to Deputy Teall and the K9's training and testing as set forth in Proposed Interrogatory 3 and Request for Production 1 for Deputy Teall, and Requests for Production 1–2 for Ada County." Dkt 28, at 8. The relevant requests the Court referenced in its MDO are as follows:

> Defendant Aaron Teall: . . .
> Interrogatory No. 3: Please identify the name of the canine you used in the drug-sniff and search of Bree Walker's car on May 28, 2020.
>
> Request for Production No. 1: To the extent they exist, please produce any policy manual, training materials, training records, and/or records of deployment and testing for the drug dog you used in the drug-dog sniff of Bree Walker's car (which occurred on May 28, 2020) . . .
>
> Defendant Ada County:
> Request for Production No. 1: Please produce (if any) the policies and training manuals for a drug-dog sniff of the exterior and/or interior of a vehicle at a traffic stop for the time period on or prior to May 28, 2020 (or as near to that time frame as possible) – or identify where they can be found.
>
> Request for Production No. 2: Please produce the training records for the drug dog used by Deputy Aaron Teall in the drug-dog sniff of Plaintiff Bree Walker's vehicle on May 28, 2020.
>
> Dkt. 25, at 3, 5.

---

[2] In Walker's initial Motion to Extend, she also requested discovery related to the officers' training and experience regarding traffic stops, searches and seizures, and questioning. Dkt. 17, at 2. However, Walker did not include those requests in her Motion for Discovery, and the Court explained in the MDO that she therefore failed to meet her burden for those requests. Dkt. 28, at 2 n. 3.

After the Court entered its MDO, the County filed a Motion to Clarify, requesting that the Court clarify "whether Defendants are required to provide discovery to Plaintiff Bree Walker pertaining to the deployment records of the drug-detection K9 that alerted to the possible presence of drugs in her vehicle." Dkt. 29-1, at 1–2. Walker responded (Dkt. 30), and the County replied (Dkt. 31).

### III. LEGAL STANDARD

No specific Federal Rule of Civil Procedure governs motions for clarification. However, such motions "are appropriate when parties 'are uncertain about the scope of a ruling' or when the ruling is 'reasonably susceptible to differing interpretations.'" *N. Alaska Env't Ctr. v. Haaland*, 2023 WL 3661998, at *3 (D. Alaska May 25, 2023) (quoting *United States v. All Assets Held at Bank Julius, Baer & Co.*, 315 F. Supp. 3d 90, 99–100 (D.D.C. 2018). "The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *Haaland*, 2023 WL 3661998 at *3.

### IV. ANALYSIS

In its Motion, the County argues that the Court's prior order did not require it to produce deployment records for the K9 unit. Dkt. 29-1, at 3–5. The County notes that although the Court discussed the relevance of training and testing records at some length in the MDO, it did not specifically discuss deployment records in that analysis. *Id.* at 3. It also argues that Walker failed to support her request for these records in the underlying Motion for Discovery. *Id.* at 3–4. On the other hand, Walker argues that her request for deployment records was supported by argument and affidavit, and that the Court clearly ordered production of deployment records in its MDO. Dkt. 30, at 1–5.

MEMORANDUM DECISION AND ORDER - 4

Walker is correct here. The discovery requests granted in the Court's MDO included Request for Production No. 1 directed at Deputy Teall, which required him to produce "any policy manual, training materials, training records, *and/or records of deployment* and testing for the drug dog you used in the drug-dog sniff of Bree Walker's car." Dkt. 25, at 3 (emphasis added). For the sake of clarification, the Court affirms that it granted Walker's request for production of K9 deployment records in the MDO, and briefly explains its reasoning for doing so.

As the Court explained in the MDO, it must determine whether the search of Walker's vehicle was supported by probable cause before it can rule on the outstanding Motion for Summary Judgment. The test for probable cause based on a drug-dog alert is a totality of the circumstances analysis. As the Supreme Court explained in *Florida v. Harris*, courts must consider "whether all the facts surrounding the dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." 568 U.S. 237, 247 (2013). Furthermore, "a defendant . . . must have an opportunity to challenge . . . evidence of a dog's reliability . . . ." and "may contest the adequacy of a certification or training program, perhaps asserting that its standards are too lax or its methods faulty." *Id.* The Supreme Court made clear in *Harris* that in cases like this one, "[t]he court should allow the parties to make their best case," permitting the government to produce "proof from controlled settings that a dog performs reliably," but also permitting an opposing party to contest that showing by "disputing the reliability of the dog overall or of a particular alert." *Id.* at 247–48.

The Court finds that records of the drug-dog's in-field performance speak to the "dog's reliability" in this case. The Court permitted discovery of the dog's deployment records in its MDO to allow Walker to make her best case in disputing the reliability of the K9 used in the search of her vehicle. Indeed, it is difficult to conceive how Walker could fully challenge that reliability in the absence of deployment records. A dog's past performance form a part of the totality of the circumstances that the Court may consider to determine whether a search based on a drug-dog alert is supported by probable cause. Additionally, Walker specifically referenced deployment records in both her discovery request and in the affidavits she provided to support her discovery motion. *See* Dkt. 25, at 5 (requesting the County "produce any policy manual, training materials, training records*, and/or records of deployment* and testing for the drug dog you used in the drug-dog sniff of Bree Walker's car" (emphasis added)); *see also* Dkt. 25-2, at 10 (affidavit of proposed expert Jerry Potter indicating that part of a normal review in drug-dog cases includes records of deployment and utilization). She also explained therein how obtaining such information could assist her in challenging the dog's reliability and placing K9-based probable cause in dispute. *Id.* The Court therefore affirms its grant of Walker's request for limited discovery related to Deputy Teall and the K9 dog's training, testing, *and deployment records* as set forth in Proposed Interrogatory 3 and Request for Production 1 for Deputy Teall, and Requests for Production 1–2 for Ada County. [3]

---

[3] In its Reply, the County also argues that production of deployment records will be unduly burdensome. The Court understands the labor-intensive process that will be required to produce some of these deployment records. However, because the K9 used in the search of Walker's vehicle had only been certified for five months prior to the search, the Court finds that production of deployment records in that time-frame is not unduly burdensome here. Additionally, the Court reminds the County that the purpose of

## V. CONCLUSION

In resolving the County's Motion for Summary Judgment, the Court must determine whether probable cause existed for the traffic stop and the subsequent vehicle search. Because a drug-dog alert formed the basis for probable cause here, the Court must consider the totality of the circumstances surrounding the alert, which includes evidence of the dog's reliability as manifest by its deployment records. The Court clarifies and affirms that it meant what it said in its MDO when it granted request for production 1 for Deputy Teall and requests for production 1 and 2 for Ada County. With respect to the deployment records, the Court will reset the deadlines originally set forth in its MDO to allow the County time to produce this discovery. Defendants have 45 days from the date of this Order to provide these deployment records to Plaintiff.

## VI. ORDER

IT IS HEREBY ORDERED THAT:

1.   Defendants' Motion to Clarify is DENIED to the extent it seeks the Court's declaration that they are not required to produce deployment records for the K9 unit. Defendants must produce the records ordered in the Court's MDO, including deployment records for the K9 unit used in Walker's traffic stop.

3.   Defendants have 45 days from the date of this order to produce the requested K9 deployment records.

---

a Motion to Clarify is to clarify a court's prior decision, not to be used as an avenue to renew substantive arguments opposing a previous motion. *See Haaland*, 2023 WL 3661998 at *3.

4.     Plaintiff's response to Defendants' Motion for Summary Judgment shall be

       due 21 days from the close of the limited discovery.

DATED: April 23, 2024

David C. Nye
Chief U.S. District Court Judge